## THE SAME *v.* SAMUEL L. WATSON.

The facts are substantially the same as in *Ellis' Case*. The draft was drawn and accepted after the note had been discounted by plaintiff.

DAVIES, J.   It is well settled in this State that the law presumes in favor of negotiable paper a good consideration until the contrary appears.   It presumes that the holder is the owner until circumstances of suspicion are shown.   It presumes, in relation to indorsed paper, that the indorsement was made before it became due ; that the party in possession took the same in the usual course of business for value, and that the maker of the note is the primary debtor. (Edwards on Bills, 312, and cases there cited.)   It is found as a fact by the learned judge who tried this action, that the note in suit was indorsed to the plaintiff before its maturity, and was discounted by the plaintiff, and the proceeds thereof placed to the credit of the payee of the note, and that the plaintiff, at the time of such discount, was a banking incorporation duly organized and transacting business.

Taking the finding of the court in connection with the testimony, which we are at liberty to refer to in explanation of it, we see what the court meant by the finding, that the plaintiff then and there discounted the said note, and placed the proceeds thereof to the credit of James Noxon, secretary, in which name the said James Noxon kept an account with the said plaintiff.   The cashier of the plaintiff testified that he meant by the discounting of the note that the amount of the interest, from the day the bank received the note until the time of its maturity, was deducted from the amount of the note, and the balance passed to the credit of the party offering the note.   When witness spoke of the indebtedness of Noxon, as secretary, to the bank, he said he was largely indebted to the bank on the first day of August, 1853, as drawee and indorser of discounted paper, which had been discounted and passed to his credit as secretary.   At the time this paper was discounted, December 31, 1853, a large amount of his discounted paper was due and unpaid.   Such paper was charged to the debit of his account, and the proceeds of this note, when discounted, was passed to his credit, and consequently it discharged and canceled an equal amount of such indebtedness.   These facts bring this case clearly within the principle settled in that of *Bank of Sandusky* v. *Covill*

(24 Wend., 114, and the cases therein referred to). It follows that the plaintiff was a *bona fide* holder of the note in suit, and as such was entitled to recover the amount thereof. But if this view is incorrect, another one may be taken, which is decisive of the liability of the defendant. The company to whose secretary this note was given was a mutual insurance company, and it was given for a premium to be earned on a policy issued by the company. It was absolute on its face for the payment of the amount therein named. The company had a right to borrow money, and as an incident thereto, the power to transfer its assets for the security of the lenders. (*Nelson* v. *Eaton*, 26 N. Y., 410.) Clearly, therefore, it had a right to raise money on its assets by procuring their discount. The defendant seeks to set up as a defense to the payment of this note, the indebtedness of the company to him on a loss sustained by him, and adjusted and payable by the company. This he cannot do, and it was so held in a case where the suit was on a premium note by the receiver of the insolvent company. (*Lawrence* v. *Nelson*, 21 N. Y., 158.) The reasoning of the court in that case is decisive of the present one, even if we are of the opinion that the plaintiff is not a *bona fide* holder of the note.

On the assumption that the plaintiffs took the note, with notice of all the facts known to the original payee, what is shown to vitiate the note, or to render it void, or which would constitute a defense to it, in the hands of the payee or holder? The case above last referred to holds that nothing of the kind was shown. The note is absolute on its face; it was given in consideration of a policy of insurance issued, and for a premium therein earned in part and to be earned. No fraud is proved, or other facts shown impeaching its validity. Therefore, there was nothing in the knowledge possessed by the officers of the bank, who were also officers of the company, which tended in the least to impeach the note, supposing the bank to be affected by their knowledge. I am, however, clearly of the opinion it was not. (*City Bank* v. *Barnard*, 1 Hill, 70.) The case of *The Central Bank of Brooklyn* v. *Lany* (1 Bosw., 202) is a case quite in point.

The then plaintiffs discounted a note given to a mutual insurance company for a premium to be earned on a policy of insurance issued by the company, and the court held that the plaintiffs were *bona fide* holders of the note, and entitled to recover the whole amount thereof, however small may have been the amount of risks undertaken for the makers.

In any view which may be taken of the case, I am of opinion that the plaintiff was entitled to recover, and that the judgment should be reversed, and a new trial ordered, costs to abide the event.

THE SAME, Plaintiffs, *v.* JOSHUA MAXWELL.

THE SAME, Plaintiffs, *v.* SAMUEL L. WATSON.

For these reasons, the like judgment should be given in each of these cases.